**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No.: _____

NANCY P. ASSAD TRUST, GEORGE ASSAD, TRUSTEE, Individually and on Behalf of All Others Similarly Situated,

       Plaintiff,

v.

BERRY PETROLEUM COMPANY,
LINN ENERGY, LLC,
LINNCO, LLC,
LINN ACQUISITION COMPANY, LLC,
BACCHUS HOLDCO, INC.,
BACCHUS MERGER SUB, INC.,
MARTIN H. YOUNG JR.,
ROBERT F. HEINEMANN,
RALPH B. BUSCH III,
WILLIAM E. BUSH JR.,
STEPHEN L. CROPPER,
J. HERBERT GAUL JR.,
STEPHEN J. HADDEN,
THOMAS J. JAMIESON,
J. FRANK KELLER and
MICHAEL S. REDDIN,

       Defendants.

---

**PLAINTIFF'S CLASS ACTION COMPLAINT
FOR BREACH OF FIDUCIARY DUTIES**

---

Plaintiff, by counsel, individually and on behalf of all others similarly situated, respectfully brings this class action for breach of fiduciary duty against the herein named defendants and alleges the following:

## SUMMARY OF THE ACTION

1.       This is a stockholder class action brought on behalf of the holders of Berry Petroleum Company ("Berry" or the "Company") common stock against Berry, its Board of Directors (the "Board"), Linn Energy, LLC ("Linn Energy"), LinnCo, LLC ("LinnCo"), Linn Acquisition Company, LLC, a direct, wholly owned subsidiary of LinnCo ("LinnCo Merger Sub") (Linn Energy, LinnCo and LinnCo Merger Sub are collectively referred to herein as "Linn"), Bacchus HoldCo, Inc., a direct, wholly owned subsidiary of Berry ("HoldCo"), and Bacchus Merger Sub, Inc., a direct, wholly owned subsidiary of HoldCo ("Bacchus Merger Sub"), for breaches of fiduciary duty and/or other violations of state law arising out of defendants' efforts to complete the sale of the Company to Linn, pursuant to an unfair process and for an unfair price (the "Proposed Acquisition"). Berry, Holdco, Bacchus Merger Sub and Linn aided and abetted these breaches of fiduciary duty. This matter arises out of the Board's breaches of their fiduciary duties owed to the Company's stockholders under state law.

2.       Berry is an independent energy company engaged in the production, development, acquisition, exploitation and exploration of crude oil and natural gas. Publicly traded since 1987, Berry's primary operations are in three of the largest oil basins in the United States. Berry traces its roots to California where it began producing heavy oil from the San Joaquin basin in 1909. In 2003, Berry added the Uinta basin in northeastern Utah, which has seen a resurgence of activity over the past year. Berry has also acquired significant oil assets in the Permian basin in West Texas. At

December 31, 2011, the Company reported proved reserves of 275 million barrels of oil equivalent ("BOE").  Proved developed reserves for the fiscal year 2011 represent 53% of total proved reserves. At year-end 2011, the Company's proved reserve mix included 186 million barrels of crude oil, condensate and natural gas liquids, and 534 billion cubic feet of natural gas, or 68% oil and 32% natural gas.  Total production in 2011 averaged 35,687 BOE per day.

3.      Linn Energy's mission is to acquire, develop and maximize cash flow from a growing portfolio of long-life oil and natural gas assets.  Linn Energy is a top-15 U.S. independent oil and natural gas development company, with approximately 4.8 Trillion cubic feet equivalents ("Tcfe") of proved reserves in producing U.S. basins as of December 31, 2012.  LinnCo was created to enhance Linn Energy's ability to raise additional equity capital to execute on its acquisition and growth strategy.  LinnCo is a Delaware limited liability company that has elected to be taxed as a corporation for U.S. federal income tax purposes.

4.      On February 21, 2013, Berry and Linn announced they had entered into a definitive merger agreement (the "Merger Agreement") under which Berry would be acquired by Linn.  Under the terms of the Merger Agreement, LinnCo will acquire the Company in an all-stock transaction in which the Company's stockholders would receive just 1.25 shares representing limited liability company interests in LinnCo ("LinnCo Shares") for each share of the Company's common stock owned.

5.      The Proposed Acquisition will occur in multiple steps.  First, Berry will engage in a holding company merger (the "HoldCo Merger") involving HoldCo and Bacchus Merger Sub.  In the HoldCo Merger, Bacchus Merger Sub will merge with and into the Company, with the Company surviving as a wholly owned subsidiary of HoldCo, and each issued and outstanding share of the

Company's Class A common stock and Class B common stock will convert into the right to receive one equivalent share of Class A common stock and one equivalent share of Class B common stock, respectively, of HoldCo.

6.     Second, promptly after the HoldCo Merger, the Company will be converted into a limited liability company (the "Conversion").  Third, promptly following the Conversion, HoldCo will be merged with and into LinnCo Merger Sub, with LinnCo Merger Sub as the surviving company (the "LinnCo Merger").  In the LinnCo Merger, each share of Holdco's Class A common stock and Class B common stock will be converted into 1.25 LinnCo Shares.

7.     Finally, promptly following the LinnCo Merger, LinnCo will contribute all of the outstanding equity interests in LinnCo Merger Sub (and therefore also its indirect ownership interest in the Company) to Linn (the "Contribution") in exchange for the issuance to LinnCo (the "Issuance") of newly issued Linn common units (the "Linn Units").  The number of Linn Units to be issued to LinnCo in the Issuance will be equal to the greater of (i) the aggregate number of LinnCo Shares issued in the LinnCo Merger and (ii) the number of Linn Units required to cause LinnCo to own no less than one-third of all of the outstanding Linn Units following the Contribution.

8.     The Proposed Acquisition significantly undervalues Berry.  Based on the February 20, 2013 closing prices, the Proposed Acquisition consideration is valued at approximately $46.24 per share, well below at least one analyst's estimated value of $50.00 per share and Berry's common stock 52-week market price high of $57.26.  The Proposed Acquisition is expected to be highly accretive to Linn's distributable cash flow per unit.  In the first full year following closing, accretion is expected to be in excess of $0.40 per unit.

9.     Moreover, for its most recently reported fiscal quarter, which ended September 30, 2012, defendant Robert Heinemann ("Heinemann"), Berry's President and Chief Executive Officer ("CEO"), stated: "'Berry delivered 5% sequential oil production growth in the third quarter with increases from all four of the Company's development assets.  Our Diatomite asset grew production 18% from second quarter levels, followed by 10% growth in our New Steam Floods, 6% growth in the Permian, and 5% growth in the Uinta.  The Company's natural gas production declined an expected 3%, resulting in a more favorable mix of 76% oil, 24% natural gas.  Operating margins were approximately $47 per BOE, supported by sales of our California oil at an $8.50 average premium to WTI.'"  At the same time Heinemann also provided the market this guidance about Berry's 2013 outlook:

> "Berry expects its capital investments will grow oil production by approximately 10-15% in 2013 with total company production growth targeted at 5-10%. We anticipate our 2013 development capital budget to range between $500-600 million. The distribution of capital will be about 50% in California and about 25% each in the Permian and Uinta. Including the acceleration into 2012, the Company plans to drill 175 Diatomite wells as part of its 2013 development plan. We will also continue to expand our Diatomite infrastructure. These investments, along with the ability to drill wells near areas with active steam, should give Berry more operational flexibility as it develops the asset going forward. We will continue to pursue small bolt-on acquisition opportunities in our three oil basins in 2013 to expand our footprint and grow our drilling inventory."

10.     The Proposed Acquisition is the result of an unfair sales process designed to ensure that only Linn has the opportunity to acquire Berry.  The Proposed Acquisition is being driven by one of Berry's largest stockholders, Winberta Holdings Ltd. ("Winberta"), holder of 6.9% of the Company's outstanding voting power, and the Company's Board and management, holders of another 4.4% of the Company's outstanding stock.  Winberta, the Board and management sought out

the Proposed Acquisition in order to secure increased liquidity for their illiquid holdings in the Company.

11.      From the Proposed Acquisition, Berry's officers and directors will receive millions of dollars in special payments – not being made to ordinary shareholders – for currently unvested stock options, performance units, and restricted shares, all of **which shall, upon completion of the transaction, become fully vested and exercisable**.  The Company's senior management is also entitled to receive from the Proposed Acquisition **over $35 million** in change-of-control payments. Moreover, the Company's management appears to be staying on board for the long term after the Proposed Acquisition closes.

12.      In addition, the Board selected a conflicted financial advisor in the process that led to the Proposed Acquisition.  Not only will Credit Suisse Securities ("Credit Suisse") receive a multi-million dollar fee as Berry's financial advisor that is contingent on the closing of the Proposed Acquisition, but Credit Suisse has provided investment banking services to Linn Energy in the past two years and has received or will receive investment banking-related compensation from Linn.

13.      The Merger Agreement also includes deal protection devices that will preclude a fair sales process for the Company and lock out competing bidders.  These preclusive deal protection devices include:

(a)      a "no-solicitation" provision that precludes Berry from providing confidential company information to, or even communicating with, potential competing bidders for the Company except under very limited circumstances;

(b)      an illusory "fiduciary out" for the no-solicitation provision that requires the Company to provide Linn with advance notice before providing any competing bidder with any

confidential company information, even after the Board has determined that the competing bid is reasonably likely to lead to a superior proposal and that the Board is breaching its fiduciary duties by not providing the competing bidder with confidential company information;

(c)     an "information rights" provision that requires the Company to provide Linn with confidential, non-public information about competing proposals which Linn can then use to formulate a matching bid;

(d)     a "matching rights" provision that requires Berry to provide Linn with the opportunity to match any competing proposal; and

(e)     a "termination fee" provision that requires Berry to pay Linn $83.7 million if the Proposed Acquisition is terminated in favor of a superior proposal.

14.     In sum, by agreeing to the Proposed Acquisition, each of the defendants has breached fiduciary duties of loyalty, due care, independence, candor, good faith and fair dealing, and/or has aided and abetted such breaches.  Rather than acting in the best interests of the Company's shareholders, defendants spent substantial effort tailoring the structural terms of the Proposed Acquisition to aggrandize their own personal interests and to meet the specific needs of Linn, which efforts will eliminate the equity interest of Berry's public shareholders.

15.     In essence, the Proposed Acquisition is the product of a hopelessly flawed process that was designed to ensure the merger of Berry with Linn on terms preferential to Linn and defendants, and detrimental to plaintiff and Berry's shareholders.  Plaintiff seeks to enjoin the Proposed Acquisition.

## JURISDICTION AND VENUE

16.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §1332(a)(l) in that plaintiff and defendants are citizens of different states and the matter in controversy exceeds $75,000, exclusive of interest and costs.  The Court has jurisdiction over this action pursuant to 15 U.S.C. §78bb(f)(3)(A)(i), because it is a class action based on the statutory or common law of Delaware, defendant Berry's state of incorporation, and thus may be maintained in federal court.

17.     This Court has jurisdiction over each defendant because each defendant is either a corporation that conducts business in and maintains operations in this District, or is an individual who has sufficient minimum contacts with this District so as to render the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

18.     Venue is proper in this District pursuant to 28 U.S.C. §1391 because Berry's headquarters are located at 1999 Broadway, Suite 3700, Denver, Colorado 80202, and defendants include an officer and/or director who resides in Colorado.

## PARTIES

19.     Plaintiff Nancy P. Assad Trust, George Assad, Trustee is, and at all times relevant hereto was, a shareholder of Berry.  Plaintiff is a resident of the State of Massachusetts.

20.     Defendant Berry is a Delaware corporation headquartered in Denver, Colorado. Berry is sued herein as an aider and abettor.

21.     Defendant HoldCo is a Delaware limited liability company headquartered in Denver, Colorado, and a direct, wholly owned subsidiary of Berry.  HoldCo is sued herein as an aider and abettor.

- 7 -

22.     Defendant Bacchus Merger Sub is a Delaware corporation headquartered in Denver, Colorado, and a direct, wholly owned subsidiary of HoldCo.  Bacchus Merger Sub is sued herein as an aider and abettor.

23.     Defendant Linn Energy is a publicly traded Delaware limited liability company headquartered in Houston, Texas.  Linn Energy is sued herein as an aider and abettor.

24.     Defendant LinnCo is a Delaware limited liability company headquartered in Houston, Texas.  LinnCo is sued herein as an aider and abettor.

25.     Defendant LinnCo Merger Sub is a Delaware limited liability company headquartered in Houston, Texas and a direct wholly owned subsidiary of LinnCo.  LinnCo Merger Sub is sued herein as an aider and abettor.

26.     Defendant Martin H. Young Jr. is and at all times relevant hereto has been a member and Chairman of the Board.  Defendant Young is a resident of the State of Texas.

27.     Defendant Heinemann is and at all times relevant hereto has been Berry's President and CEO and a member of the Board.  Defendant Heinemann is a resident of the State of Texas.

28.     Defendant Ralph B. Busch III is and at all times relevant hereto has been a member of the Board.  Defendant Busch is a resident of the State of California.

29.     Defendant William E. Bush Jr. is and at all times relevant hereto has been a member of the Board.  Defendant Bush is a resident of the State of California.

30.     Defendant Stephen L. Cropper is and at all times relevant hereto has been a member of the Board.  Defendant Cropper is a resident of the State of Oklahoma.

31.     Defendant J. Herbert Gaul Jr. is and at all times relevant hereto has been a member of the Board.  Defendant Gaul is a resident of the State of Texas.

32.     Defendant Stephen J. Hadden is and at all times relevant hereto has been a member of the Board.  Defendant Hadden is a resident of the State of Texas.

33.     Defendant Thomas J. Jamieson is and at all times relevant hereto has been a member of the Board.  Defendant Jamieson is a resident of the State of California.

34.     Defendant J. Frank Keller is and at all times relevant hereto has been a member of the Board.  Defendant Keller is a resident of the State of Colorado.

35.     Defendant Michael S. Reddin is and at all times relevant hereto has been a member of the Board.  Defendant Reddin is a resident of the State of Texas.

36.     The defendants named above in ¶¶26-35 are sometimes collectively referred to herein as the "Individual Defendants."

## CLASS ACTION ALLEGATIONS

37.     Plaintiff brings this action individually and as a class action pursuant to Federal Rule of Civil Procedure 23 on behalf of all public holders of Berry common stock who are being and will be harmed by defendants' actions described below (the "Class").  Excluded from the Class are defendants herein and any person, firm, trust, corporation, or other entity related to or affiliated with any defendants.

38.     This action is properly maintainable as a class action under Federal Rule of Civil Procedure 23.

39.     The Class is so numerous that joinder of all members is impracticable.  According to Berry's U.S. Securities and Exchange Commission filings, as of October 26, 2012, there were more than 52.3 million shares of Berry common stock outstanding.

40.     There are questions of law and fact which are common to the Class and which predominate over questions affecting any individual Class member.  The common questions include, *inter alia*, the following:

(a)     whether defendants have breached their fiduciary duties of undivided loyalty, independence, or due care with respect to plaintiff and the other members of the Class in connection with the Proposed Acquisition, and/or are aiding and abetting therein;

(b)     whether defendants are engaging in self-dealing in connection with the Proposed Acquisition, and/or are aiding and abetting therein;

(c)     whether defendants have breached their fiduciary duty to secure and obtain the best value reasonable under the circumstances for the benefit of plaintiff and the other members of the Class in connection with the Proposed Acquisition, and/or are aiding and abetting therein;

(d)     whether defendants are unjustly enriching themselves and other insiders or affiliates of Berry and/or Linn, and/or are aiding and abetting therein;

(e)     whether defendants have breached any of their other fiduciary duties owed to plaintiff and the other members of the Class in connection with the Proposed Acquisition, including the duties of good faith, diligence, candor and fair dealing, and/or are aiding and abetting therein;

(f)     whether defendants, in bad faith and for improper motives, have impeded or erected barriers to discourage other offers for the Company or its assets, and/or have aided and abetted therein;

(g)     whether the Proposed Acquisition compensation payable to plaintiff and the Class is unfair and inadequate; and

(h)     whether plaintiff and the other members of the Class would be irreparably harmed were the transactions complained of herein consummated.

41.     Plaintiff's claims are typical of the claims of the other members of the Class and plaintiff does not have any interests adverse to the Class.

42.     Plaintiff is an adequate representative of the Class, has retained competent counsel experienced in litigation of this nature, and will fairly and adequately protect the interests of the Class.

43.     The prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying adjudications with respect to individual members of the Class which would establish incompatible standards of conduct for the party opposing the Class.

44.     Plaintiff anticipates that there will be no difficulty in the management of this litigation.  A class action is superior to other available methods for the fair and efficient adjudication of this controversy.

45.     Defendants have acted on grounds generally applicable to the Class with respect to the matters complained of herein, thereby making appropriate the relief sought herein with respect to the Class as a whole.

## THE PROPOSED ACQUISITION

46.     Berry is an independent energy company engaged in the production, development, acquisition, exploitation and exploration of crude oil and natural gas.  Publicly traded since 1987, Berry's primary operations are in three of the largest oil basins in the United States.  Berry traces its roots to California where it began producing heavy oil from the San Joaquin basin in 1909.  In 2003, Berry added the Uinta basin in northeastern Utah, which has seen a resurgence of activity over the

past year.  Berry has also acquired significant oil assets in the Permian basin in West Texas.  On December 31, 2011, the Company reported proved reserves of 275 million BOE.  Proved developed reserves for the fiscal year 2011 represent 53% of total proved reserves.  At year-end 2011, the Company's proved reserve mix included 186 million barrels of crude oil, condensate and natural gas liquids, and 534 billion cubic feet of natural gas, or 68% oil and 32% natural gas.  Total production in 2011 averaged 35,687 BOE per day.

47.     Linn Energy's mission is to acquire, develop and maximize cash flow from a growing portfolio of long-life oil and natural gas assets.  Linn Energy is a top-15 U.S. independent oil and natural gas development company, with approximately 4.8 Tcfe of proved reserves in producing U.S. basins as of December 31, 2012.  LinnCo was created to enhance Linn Energy's ability to raise additional equity capital to execute on its acquisition and growth strategy.  LinnCo is a Delaware limited liability company that has elected to be taxed as a corporation for U.S. federal income tax purposes.

48.     On February 21, 2013, Berry and Linn announced the Merger Agreement under which Berry would be acquired by Linn.  Under the terms of the Merger Agreement, LinnCo will acquire the Company in an all-stock transaction in which the Company's stockholders would receive just 1.25 shares representing limited liability company interests in LinnCo (the LinnCo Shares) for each share of the Company's common stock.

49.     The press release announcing the Proposed Acquisition states in pertinent part:

**LINN Energy and LinnCo to Acquire Berry Petroleum Company for $4.3 Billion**

**First Ever Acquisition of a Public C-Corp by an Upstream LLC or MLP**

. . . LINN Energy, LLC, LinnCo, LLC and Berry Petroleum Company today announced the signing of a definitive merger agreement pursuant to which LINN and LinnCo will acquire all of Berry's outstanding shares for total consideration of $4.3 billion, including the assumption of debt. The transaction, which is structured as a stock-for-stock merger of Berry with LinnCo followed by the acquisition of the Berry assets by LINN, is expected to be tax-free to Berry shareholders. This transaction represents the first ever acquisition of a public C-Corp by an upstream LLC or MLP.

**Operational Highlights**

- Berry's long-life, low-decline, mature assets are an excellent fit for an MLP/LLC;

- Meaningful growth to LINN's portfolio with increased geographic presence in California, the Permian Basin, East Texas,   and the Rockies, as well as the addition of an attractive new core area in the Uinta Basin;

- Production of approximately 240 MMcfe/d, increasing LINN's current production by 30 percent;

- Berry's reserves are approximately 75 percent oil, which results in a meaningful increase in liquids exposure to 54 percent   from 46 percent of proved reserves, pro forma as of December 31, 2012;

- Proved reserves of approximately 1.65 Tcfe, increasing LINN's estimated proved reserves by 34 percent;

- LINN has identified additional probable and possible reserves at Berry of approximately 3.8 Tcfe;

- Approximately 3,200 producing wells and more than 200,000 net acres; and

- Potential for production optimization and cost savings.

**Financial Highlights**

- The transaction is expected to be highly accretive to distributable cash flow per unit. In the first full year following closing, accretion is expected to be in excess of $0.40 per unit.

- LINN plans to recommend to its board of directors an increase in the current quarterly distribution of 6.2 percent. LINN's current quarterly distribution of $0.725 per unit, or $2.90 per year, would increase to $0.77 per unit, or $3.08 per year. The recommended increase is anticipated to take effect in the

quarter immediately following the closing of the transaction, which is estimated to occur on or before June 30, 2013.

- LinnCo's current estimated annual dividend of $2.84 per share includes a reduction of $0.06 per share for taxes, which LinnCo now estimates to be zero for 2013. Therefore, management estimates that the LinnCo dividend per share for the quarter ended March 31, 2013 will increase 2 percent from $0.71 to $0.725 per quarter, or $2.90 per share on an annual basis.

- LinnCo's management intends to recommend to its board an increase in LinnCo's dividend by 8.5 percent following the closing of the transaction to $3.08 per share on an annualized basis, which includes the $0.18 per share increase in LINN distributions.

- Due to the significant accretion expected from this transaction, LINN's coverage ratio for the second half of 2013, assuming the transaction closes on or before June 30, 2013, is expected to be approximately 1.20x including the anticipated distribution and dividend increases.

- All stock consideration and greatly increased size are expected to result in significantly improved debt metrics.

- As part of the transaction, Berry will be converted into a limited liability company and then it will be contributed to LINN in exchange for LINN units. This arrangement allows LINN to own Berry's assets in a pass-through entity without any immediate payment of tax.

"This transaction creates tremendous value for LINN Energy, LinnCo and Berry equityholders. We are pleased to have been able to achieve such a mutually beneficial outcome," said Mark E. Ellis, Chairman, President and Chief Executive Officer, LINN Energy. "Berry's assets are an excellent fit for LINN, and we believe this transaction generates significant accretion to our distributable cash flow per unit."

"We have great respect for what the Berry management team has accomplished and consider the Berry employees to be an important part of this transaction," added Ellis. "We welcome them to LINN and believe that together, we will be positioned for great success in the future."

Robert Heinemann, President and Chief Executive Officer, Berry Petroleum Company, said, "Today's merger announcement with LINN Energy marks the beginning of a new, important chapter in our company's history. Berry and LINN have demonstrated the ability to prudently grow their businesses while delivering value and returns to their respective shareholders and unitholders. Berry's portfolio fits well with LINN's structure and asset base, and the combination of the two

- 14 -

companies will create one of the largest independent E&P companies in North America. This transaction consideration delivers substantial value to Berry shareholders with the opportunity to participate in the upside potential of the combined, growing company."

**Transaction Terms & Structure**

Under the terms of the agreement, which was unanimously approved by the boards of directors of LINN Energy, LinnCo and Berry, LinnCo has agreed to issue 1.25 common shares for each common share of Berry outstanding prior to the merger. The consideration to be received by Berry shareholders is valued at $46.2375 per Berry share based on LinnCo's closing price as of February 20, 2013. This represents a premium of 19.8 percent to the Berry closing price on February 20, 2013, and a premium of 23.1 percent to its one month average price at that date.

The acquisition, which is expected to be tax-free to Berry's shareholders, is structured as a stock-for-stock merger. In connection with the merger Berry will be converted into an LLC. Upon completion of the merger, LinnCo will contribute the Berry assets to LINN in exchange for LINN units.

In connection with approval of the contribution from LinnCo to LINN Energy, the boards of directors of each company formed a conflicts committee to evaluate any potential conflicts that may arise between LINN and LinnCo. To ensure the independence of each of the conflicts committees, two directors resigned from the LinnCo board of directors to serve on the LINN conflicts committee and two directors resigned from the LINN board of directors to serve on LinnCo's conflicts committee. In addition, in connection with the transaction, one representative of the board of directors of Berry will be appointed to the board of either LINN or LinnCo.

The transaction is subject to the approval of the shareholders of Berry and LinnCo and the unitholders of LINN Energy, as well as customary closing conditions, including clearance under the Hart-Scott-Rodino Antitrust Improvements Act of 1976, as amended. The transaction is expected to close by June 30, 2013. The combined company will be headquartered in Houston, Texas.

**2013 Estimated Cash Distributions (Subject to Board Approval)**

**LINN ENERGY**

|  | **First Quarter** | **Second Quarter** | **Third Quarter** | **Fourth Quarter** |
|---|---|---|---|---|
| **Quarterly** | $0.725 | $0.725 | $0.77 | $0.77 |
| **Annualized** | $2.90 | $2.90 | $3.08 | $3.08 |

**LINNCO**

|  | **First Quarter** | **Second Quarter** | **Third Quarter** | **Fourth Quarter** |
|---|---|---|---|---|
| **Quarterly** | $0.725 | $0.725 | $0.77 | $0.77 |
| **Annualized** | $2.90 | $2.90 | $3.08 | $3.08 |

## LinnCo Estimated Taxes

In order to avoid immediate tax on LINN's acquisition of the Berry assets, LinnCo incurred a deferred tax liability. Because of the incremental costs for LinnCo resulting from this deferred tax liability, LINN has agreed to pay LinnCo $6 million per year for three years (2013, 2014 and 2015) or roughly $0.06 per LinnCo share. Due to the significant estimated shield provided by LINN to LinnCo, LinnCo's cash tax liability is estimated to be zero for the last two quarters of 2013. In future periods, assuming current estimates for taxable income and capital spending, management estimates that LinnCo's tax liability will be in the range of 2 percent-5 percent of dividends paid, which is the same as the estimates provided in the prospectus for the LinnCo IPO. Therefore, this transaction is not estimated to give rise to any additional tax liability for LinnCo over and above the guidance that was previously provided. LINN's management and board have also agreed to evaluate the need for any additional payments from LINN Energy to LinnCo should taxes be higher than expected.

## Senior Notes

LINN expects that the completion of this transaction will trigger change of control provisions in the indentures governing Berry's existing senior notes. These change of control provisions entitle holders of the notes to receive 101 percent of par for the notes plus accrued and unpaid interest from a change of control offer related to each series of notes. LINN expects any of Berry's notes not tendered pursuant to the change of control offers to remain outstanding following the transaction, subject to any opportunistic refinancing of such notes it may pursue in the future based on market conditions.

## Advisors

Citigroup Global Market Inc. acted as exclusive financial advisor to LinnCo, and provided a fairness opinion to the LinnCo board of directors; Latham & Watkins LLP acted as legal advisor to LINN Energy and LinnCo. Greenhill & Co., LLC provided a fairness opinion to the conflicts committee of the LINN Energy board of directors; Akin Gump Strauss Hauer & Feld LLP acted as legal advisor to the conflicts committee of the LINN Energy board of directors. Evercore Partners provided a fairness opinion to the conflicts committee of the LinnCo board of directors; Locke Lord LLP acted as legal advisor to the conflicts committee of the LinnCo board of directors. Credit Suisse Securities (USA) LLC acted as exclusive financial advisor to Berry Petroleum Company and provided a fairness opinion to the

Berry Petroleum Company board of directors. Wachtell, Lipton, Rosen & Katz acted as legal advisor to Berry Petroleum Company.

50.     The Proposed Acquisition will occur in multiple steps.  First, Berry will engage in a holding company merger (the HoldCo Merger) involving HoldCo and Bacchus Merger Sub.  In the HoldCo Merger, Bacchus Merger Sub will merge with and into the Company, with the Company surviving as a wholly owned subsidiary of HoldCo, and each issued and outstanding share of the Company's Class A common stock and Class B common stock will convert into the right to receive one equivalent share of Class A common stock and one equivalent share of Class B common stock, respectively, of HoldCo.

51.     Second, promptly after the HoldCo Merger, the Company will be converted into a limited liability company.  Third, promptly following the Conversion, HoldCo will be merged with and into LinnCo Merger Sub, with LinnCo Merger Sub as the surviving company (the LinnCo Merger).  In the LinnCo Merger, each share of Holdco's Class A common stock and Class B common stock will be converted into 1.25 LinnCo Shares.

52.     Finally, promptly following the LinnCo Merger, LinnCo will contribute all of the outstanding equity interests in LinnCo Merger Sub (and therefore also its indirect ownership interest in the Company) to Linn in exchange for the issuance to LinnCo of newly issued Linn Units.  The number of Linn Units to be issued to LinnCo in the Issuance will be equal to the greater of (i) the aggregate number of LinnCo Shares issued in the LinnCo Merger and (ii) the number of Linn Units required to cause LinnCo to own no less than one-third of all of the outstanding Linn Units following the Contribution.

53.     The Proposed Acquisition significantly undervalues Berry.  Based on the February 20, 2013 closing prices, the Proposed Acquisition consideration is valued at approximately $46.24

per share, well below at least one analyst's estimated value of $50.00 per share and Berry's common stock 52-week market price high of $57.26. The Proposed Acquisition is expected to be highly accretive to Linn's distributable cash flow per unit. In the first full year following closing, accretion is expected to be in excess of $0.40 per unit.

54.     Moreover, for its most recently reported fiscal quarter, which ended September 30, 2012, defendant Heinemann, Berry's President and CEO, stated: "'Berry delivered 5% sequential oil production growth in the third quarter with increases from all four of the Company's development assets. Our Diatomite asset grew production 18% from second quarter levels, followed by 10% growth in our New Steam Floods, 6% growth in the Permian, and 5% growth in the Uinta. The Company's natural gas production declined an expected 3%, resulting in a more favorable mix of 76% oil, 24% natural gas. Operating margins were approximately $47 per BOE, supported by sales of our California oil at an $8.50 average premium to WTI.'" At the same time Heinemann also provided the market this guidance about Berry's 2013 outlook:

> "Berry expects its capital investments will grow oil production by approximately 10-15% in 2013 with total company production growth targeted at 5-10%. We anticipate our 2013 development capital budget to range between $500-600 million. The distribution of capital will be about 50% in California and about 25% each in the Permian and Uinta. Including the acceleration into 2012, the Company plans to drill 175 Diatomite wells as part of its 2013 development plan. We will also continue to expand our Diatomite infrastructure. These investments, along with the ability to drill wells near areas with active steam, should give Berry more operational flexibility as it develops the asset going forward. We will continue to pursue small bolt-on acquisition opportunities in our three oil basins in 2013 to expand our footprint and grow our drilling inventory."

55.     The Proposed Acquisition is the result of an unfair sales process designed to ensure that only Linn has the opportunity to acquire Berry. The Proposed Acquisition is being driven by one of Berry's largest stockholders, Winberta, holder of 6.9% of the Company's outstanding voting

power, and the Company's Board and management, holders of another 4.4% of the Company's outstanding stock.  Winberta, the Board and management sought out the Proposed Acquisition in order to secure increased liquidity for their illiquid holdings in the Company.

56.    From the Proposed Acquisition, Berry's officers and directors will receive millions of dollars in special payments – not being made to ordinary shareholders – for currently unvested stock options, performance units, and restricted shares, all of *which shall, upon completion of the transaction, become fully vested and exercisable*.  The Company's senior management is also entitled to receive from the Proposed Acquisition *over $35 million* in change-of-control payments.  Moreover, the Company's management appears to be staying on board for the long term after the Proposed Acquisition closes.

57.    In addition, the Board selected a conflicted financial advisor in the process that led to the Proposed Acquisition.  Not only will Credit Suisse receive a multi-million dollar fee as Berry's financial advisor that is contingent on the closing of the Proposed Acquisition, but Credit Suisse has provided investment banking services to Linn Energy in the past two years and has received or will receive investment banking-related compensation from Linn.

58.    The Merger Agreement also includes deal protection devices that will preclude a fair sales process for the Company and lock out competing bidders.  These preclusive deal protection devices include:

(a)    a "no-solicitation" provision that precludes Berry from providing confidential company information to, or even communicating with, potential competing bidders for the Company except under very limited circumstances;

- 19 -

(b)      an illusory "fiduciary out" for the no-solicitation provision that requires the Company to provide Linn with advance notice before providing any competing bidder with any confidential company information, even after the Board has determined that the competing bid is reasonably likely to lead to a superior proposal and that the Board is breaching its fiduciary duties by not providing the competing bidder with confidential company information;

(c)      an "information rights" provision that requires the Company to provide Linn with confidential, non-public information about competing proposals which Linn can then use to formulate a matching bid;

(d)      a "matching rights" provision that requires Berry to provide Linn with the opportunity to match any competing proposal; and

(e)      a "termination fee" provision that requires Berry to pay Linn $83.7 million if the Proposed Acquisition is terminated in favor of a superior proposal.

59.      In sum, by agreeing to the Proposed Acquisition, each of the defendants has breached fiduciary duties of loyalty, due care, independence, candor, good faith and fair dealing, and/or has aided and abetted such breaches.  Rather than acting in the best interests of the Company's shareholders, defendants spent substantial effort tailoring the structural terms of the Proposed Acquisition to aggrandize their own personal interests and to meet the specific needs of Linn, which efforts will eliminate the equity interest of Berry's public shareholders.

60.      In essence, the Proposed Acquisition is the product of a hopelessly flawed process that was designed to ensure the merger of Berry with Linn on terms preferential to Linn and defendants, and detrimental to plaintiff and Berry's shareholders.  Plaintiff seeks to enjoin the Proposed Acquisition.

## DEFENDANTS' FIDUCIARY DUTIES

61.     In any situation where the directors of a publicly traded corporation undertake a transaction that will result in either (i) a change in corporate control or (ii) a break-up of the corporation's assets, the directors have an affirmative fiduciary obligation to obtain the highest value reasonably available for the corporation's shareholders, and if such transaction will result in a change of corporate control, the shareholders are entitled to receive a significant premium.  To diligently comply with these duties, the directors may not take any action that:

(a)     adversely affects the value provided to the corporation's shareholders;

(b)     will discourage or inhibit alternative offers to purchase control of the corporation or its assets;

(c)     contractually prohibits them from complying with their fiduciary duties;

(d)     will otherwise adversely affect their duty to search and secure the best value reasonably available under the circumstances for the corporation's shareholders; and/or

(e)     will provide the directors with preferential treatment at the expense of, or separate from, the public shareholders.

62.     In accordance with their duties of loyalty and good faith, the Individual Defendants, as directors and/or officers of Berry, are obligated to refrain from:

(a)     participating in any transaction where the directors' or officers' loyalties are divided;

(b)     participating in any transaction where the directors or officers receive or are entitled to receive a personal financial benefit not equally shared by the public shareholders of the corporation; and/or

- 21 -

(c)     unjustly enriching themselves at the expense or to the detriment of the public shareholders.

63.     Plaintiff alleges herein that defendants, separately and together, in connection with the Proposed Acquisition, breached and/or aided and abetted in the breach of fiduciary duties owed to plaintiff and the other public shareholders of Berry, including the duties of loyalty, good faith, candor, due care and independence.  As a result of these breaches of fiduciary duties and the aiding and abetting thereof, neither plaintiff nor the Class will receive adequate or fair value for their Berry common stock in the Proposed Acquisition.

64.     Because defendants have breached their duties of due care, loyalty and good faith in connection with the Proposed Acquisition, and/or have aided and abetted therein, the burden of proving the inherent or entire fairness of the Proposed Acquisition, including all aspects of its negotiation, structure, price and terms, is placed upon defendants as a matter of law.

## COUNT

### Claim for Breach of Fiduciary Duties and Aiding and Abetting
### Against All Defendants

65.     Plaintiff repeats and realleges each allegation set forth herein.

66.     The Individual Defendants, aided and abetted by Berry, Linn Energy, LinnCo, LinnCo Merger Sub, HoldCo, and Bacchus Merger Sub, have knowingly or recklessly and in bad faith violated their fiduciary duties of care, loyalty, candor, good faith, and independence owed to the public shareholders of Berry and have acted to put their personal interests ahead of the interests of Berry's shareholders.

67.     By the acts, transactions and courses of conduct alleged herein, defendants, individually and acting as a part of a common plan, knowingly or recklessly and in bad faith are

attempting to unfairly deprive plaintiff and the other members of the Class of the true value of their investment in Berry.

68.     The Individual Defendants have knowingly or recklessly and in bad faith violated their fiduciary duties by entering into the Proposed Acquisition without regard to the fairness of the transaction to Berry's shareholders.  Berry, Linn Energy, LinnCo, LinnCo Merger Sub, HoldCo, and Bacchus Merger Sub aided and abetted the Individual Defendants' breaches of fiduciary duties owed to plaintiff and the other holders of Berry stock.

69.     As demonstrated by the allegations above, the Individual Defendants knowingly or recklessly and in bad faith failed to exercise the care required, and breached their duties of loyalty, good faith, candor and independence owed to the shareholders of Berry because, among other reasons, they failed to ensure a fair process and maximization of shareholder value.

70.     Because the Individual Defendants dominate and control the business and corporate affairs of Berry, and are in possession of private corporate information concerning Berry's assets, business and future prospects, there exists an imbalance and disparity of knowledge and economic power between them and the public shareholders of Berry which makes it inherently unfair for them to pursue any proposed transaction wherein they will reap disproportionate benefits to the exclusion of maximizing stockholder value.

71.     By reason of the foregoing acts, practices and course of conduct, the Individual Defendants have knowingly or recklessly and in bad faith failed to exercise ordinary care and diligence in the exercise of their fiduciary obligations toward plaintiff and the other members of the Class.

72.     As a result of the actions of defendants, plaintiff and the Class have been and will be irreparably harmed.

73.     Unless the Proposed Acquisition is enjoined by the Court, defendants will continue to knowingly or recklessly and in bad faith breach their fiduciary duties owed to plaintiff and the other members of the Class, will not engage in arm's-length negotiations on the Proposed Acquisition's terms, and will not supply to Berry's shareholders sufficient information to enable them to make informed decisions regarding the tender of their shares in connection with the Proposed Acquisition, and may consummate the Proposed Acquisition, all to the irreparable harm of the members of the Class.

74.     Plaintiff and the other members of the Class have no adequate remedy at law.  Only through the exercise of this Court's equitable powers can plaintiff and the Class be fully protected from the immediate and irreparable injury which defendants' actions threaten to inflict.

## PRAYER FOR RELIEF

WHEREFORE, plaintiff demands injunctive relief, in plaintiff's favor and in favor of the Class and against defendants, as follows:

A.     Declaring that this action is properly maintainable as a class action;

B.     Declaring and decreeing that the Proposed Acquisition was entered into in breach of the fiduciary duties of the defendants and is therefore unlawful and unenforceable;

C.     Enjoining defendants, their agents, counsel, employees and all persons acting in concert with them from consummating the Proposed Acquisition, unless and until the Company adopts and implements a procedure or process to obtain the highest possible value for shareholders;

D.      Directing the Individual Defendants to exercise their fiduciary duties to obtain a transaction that is in the best interests of Berry's shareholders and to refrain from entering into any transaction until the process for the sale or merger of the Company is completed and the highest possible value is obtained;

E.      Rescinding, to the extent already implemented, the Merger Agreement or any of the terms thereof;

F.      Awarding plaintiff the costs and disbursements of this action, including reasonable attorneys' and experts' fees; and

G.      Granting such other and further equitable relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

DATED:  March 1, 2013

<div style="margin-left: 50%;">

*s/ Kip B. Shuman*
KIP B. SHUMAN
RUSTY E. GLENN
THE SHUMAN LAW FIRM
885 Arapahoe Avenue
Boulder, CO  80302
Telephone:  303/861-3003
303/484-4886 (fax)

ROBBINS GELLER RUDMAN
      & DOWD LLP
RANDALL J. BARON
A. RICK ATWOOD, JR.
DAVID T. WISSBROECKER
EDWARD M. GERGOSIAN
655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  619/231-1058
619/231-7423 (fax)

RYAN & MANISKAS, LLP
RICHARD A. MANISKAS
995 Old Eagle School Road, Suite 311
Wayne, PA  19087
Telephone:  484/588-5516
484/450-2582 (fax)

*Attorneys for Plaintiff*

</div>